IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY H.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:24-CV-00254 |
| v. ) | |
| ) | Magistrate Judge |
| LELAND DUDEK,[2] Acting ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Timothy H.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 11] is denied, and the Commissioner's Motion for Summary Judgment [Doc. No. 14] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Martin O'Malley resigned as Commissioner of Social Security on November 29, 2024, and Leland Dudek was appointed as the Acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Martin O'Malley as the defendant in this suit.

## BACKGROUND

I.   PROCEDURAL HISTORY

On October 21, 2016, Plaintiff filed applications for DIB. Plaintiff also protectively filed an application for SSI on November 18, 2016. In both applications, Plaintiff alleged disability since February 1, 2014. The claims were denied initially, and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 19, 2018. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On January 30, 2019, the ALJ denied Plaintiff's claim for benefits, finding that he has not been under a disability under the Social Security Act from February 1, 2014 through the date of the decision. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

This Court reviewed the ALJ's decision, granted Plaintiff's request to reverse or remand in part, and denied the Commissioner's cross-motion for summary judgment, finding that the ALJ had failed to build an accurate and logical bridge from the evidence to her conclusion with respect to the so-called "paragraph-B criteria," which refer to a claimant's impairments in the four broad areas of mental functioning. This Court found that the ALJ did not evaluate each criterion

2

separately with supporting evidence, leaving this Court unable to meaningfully review her reasoning, which necessitated remand. Although this Court did not reach the other errors claimed by Plaintiff, it specifically admonished the Commissioner that, on remand, the ALJ should take special care to ensure that all of Plaintiff's non-exertional impairments are properly accounted for, Plaintiff's alleged symptoms are properly assessed, and the treating source opinions are properly evaluated.

On remand, the ALJ held an online video hearing on August 15, 2023. Plaintiff and his attorney participated via video, and a different VE participated telephonically.

## II.   ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 1, 2014.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: non-epileptic seizure disorder, postural orthostatic tachycardia syndrome (POTS) with migraine headaches, bicuspid aortic valve insufficiency, and aortic aneurysm. Importantly, the ALJ concluded that Plaintiff's medically determinable mental impairments of major depressive disorder, and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation. In reaching this conclusion, the ALJ the broad functional areas

3

of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments known as the "paragraph B" criteria.

The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal any listed impairments. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the following additional limitations: no ladders, ropes, or scaffolds; avoid even moderate exposure to hazards including dangerous moving machinery and unprotected heights; and avoid concentrated exposure to loud noise environments and intense bright light including sunlight.

At step four, the ALJ concluded that Plaintiff has at all times been able to perform his past relevant work as a cashier, which does not require the performance of work-related activities precluded by the Plaintiff's RFC. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if they have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

4

less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.   JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus "limited to ensuring that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024); *see Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is

5

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *see Warnell v. O'Malley*, 97 F.4th 1050, 1051 (7th Cir. 2024) ("[S]ubstantial evidence [is] a standard that the Supreme Court has emphasized is light.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. At all times, the burden of demonstrating disability remains on the claimant. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). "It is not enough to nitpick the ALJ's order. To warrant reversal, [the claimant] must show that the ALJ's determination was not supported by substantial evidence." *Morales*, 103 F.4th at 471 (explaining further

6

that claimants "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record").

ALJs therefore "are subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence . . . or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). ALJs must "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Warnell*, 97 F.4th at 1054; *see Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Furthermore, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion" but must consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for three reasons: (1) the ALJ ignored the effects of Plaintiff's non-severe mental impairments, in combination with his severe physical impairments, on his ability to sustain the on-

task and attendance requirements of full-time work; (2) the ALJ relied upon cherry-picking and improper inferences to find that Plaintiff's subjective statements were not supported by the record; and (3) the ALJ failed to support her rejection of the opinions of treating physicians and statements from third parties. The Court disagrees.

### A. The ALJ Fully Considered Plaintiff's Mental Impairments in Combination with his Physical Impairments in the RFC Analysis

Plaintiff first contends that the ALJ failed to properly consider Plaintiff's paragraph B mild functional deficits and how they operate in combination with Plaintiff's physical impairments to impede his ability to sustain the on-task and attendance requirements of fulltime work in determining Plaintiff's RFC. Plaintiff argues that the ALJ merely reiterated her paragraph B assertion that Plaintiff's mental status findings were typically within normal limits and suggested that Plaintiff's claim of a suicide attempt was inconsistent with mental status examination findings.

As noted above, at step two, the ALJ concluded that Plaintiff's medically determinable mental impairments of major depressive disorder, and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation. During the ALJ's RFC assessment, he explained that Plaintiff alleged that most days he has fatigue, pain, brain fog, and that he is unable to concentrate for long periods of time. The ALJ discussed Plaintiff's pre-remand testimony and his testimony at the remand hearing and specifically noted that

8

Plaintiff testified that pain interferes with his thinking and completing his homework. The ALJ then found that Plaintiff's impairments could cause some or all of Plaintiff's alleged symptoms, but that Plaintiff's allegations with respect to the intensity, persistence, and limiting effects of the symptoms were inconsistent with the record, noting that psychological consultative examinations found mental status typically within normal limits. The ALJ cited a 2017 psychological evaluation by Dr. Matthew Galloucis, a 2017 neurology examination By Dr. Alexandru Barboi, a 2022 mental status evaluation by Dr. Kenneth Heinrichs, and a 2023 mental health client care report by Nurse Practitioner Heather Leindecker in support for his finding. In each of the cited reports, despite the fact that Plaintiff purportedly was experiencing his physical symptoms at the time of each evaluation, his mental status was within normal limits.

Plaintiff also asserts that the ALJ was impermissibly "playing doctor" by, in assessing the severity of Plaintiff's condition, considering the facts that (1) Plaintiff's symptoms have been managed with conservative and inconsistent treatment, and (2) there is no evidence of psychiatric hospitalization, engagement in an intensive outpatient program, or recommendation for a higher level of care than that already received through counseling and medication management. Indeed, Plaintiff contends that the ALJ "reach[ed] [his] own independent medical conclusion without support from the medical evidence." Not so. While the ALJ did not cite any specific portion of the record, he clearly was referring to the facts that plaintiff self-reported that treatment through medication had been helpful and his medical

9

providers never recommended additional, alternative, or elevated treatment. These are conclusions reached by Plaintiff and his treating physicians respectively, not by the ALJ.

Finally, Plaintiff contends that the ALJ failed to consider Plaintiff's mental impairments in combination with his physical impairments and the toxic interplay between them. But the ALJ did consider all of Plaintiffs' mental symptoms and his physical symptoms in the RFC analysis; he merely addressed them separately. It is true that an ALJ "must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). But in *Denton*, the Seventh Circuit found that the ALJ did consider fully the combination of the claimant's limitations where the ALJ considered each limitation in turn, as the ALJ did here.

Finally, as to Plaintiff's alleged suicide attempt the night before the hearing, the ALJ explained that such a suicide attempt was inconsistent with the mental status examination findings in the record, Plaintiff's own testimony of not requiring emergency medical care, and Plaintiff's ability to attend the hearing. The ALJ further noted that the record did not reflect any suicide attempt in more than five years. Therefore, the ALJ fully considered Plaintiff's mental impairments in combination with his physical impairments. While Plaintiff may not agree with the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *See Skinner*, 478 F.3d at 841. Rather, the role of the Court is "limited to ensuring that

10

substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales*, 103 F.4th at 472.

### B. The ALJ Properly Found that Plaintiff's Subjective Statements Are Not Supported by the Record

Plaintiff next argues that the ALJ improperly determined that Plaintiff's alleged physical symptoms and limitations were inconsistent with the record because he "cherry picked" pieces of evidence that supported a conclusion of no disability but ignored evidence that undermines that conclusion. However, the ALJ cited multiple reasons for finding that Plaintiff's subjective allegations were not credible. First, the ALJ noted that Plaintiff's symptoms as described in his testimony were inconsistent with the descriptions he gave to his medical providers. The ALJ also explained that Plaintiff's alleged symptoms were inconsistent with his course of treatment, or lack thereof. But most importantly, the ALJ observed that Plaintiff's allegations were inconsistent with the examination findings of multiple medical providers, including Plaintiff's own physicians and the State psychological consultative examiner. Indeed, the only evidence that Plaintiff cites in support of his argument is the opinion of Plaintiff's cardiologist Dr. Samy, which the ALJ found to be inconsistent with Dr. Samy's own examination notes. Therefore, the ALJ relied on substantial evidence in concluding that Plaintiff's subjective statements about his symptoms were inconsistent with the record. To the extent Plaintiff urges the Court to disagree with the ALJ's conclusion, the Court may not

11

substitute its judgment for that of the Commissioner by deciding questions of credibility. *See Skinner*, 478 F.3d at 841.

### C. The ALJ Supported Her Rejection of the Opinions of Treating Physicians and Statements from Third Parties

Finally, Plaintiff asserts that the ALJ did not provide a sound explanation for rejecting the opinions of three of Plaintiff's treating physicians—The ALJ assigned no weight to the opinions of neurologist Dr. Barboi, cardiologist Dr. Samy, and psychiatrist Dr. Epstein. Plaintiff also contends that the ALJ improperly dismissed the descriptions provided by Plaintiff's mother, father, and sister of several alleged seizures.

With respect to Dr. Barboi, the ALJ explained that Dr. Barboi's opinion that Plaintiff would be absent from work more than three times per month was inconsistent with his own treatment notes and cited specific examples of such inconsistencies. As discussed above, the ALJ also observed that Dr. Samy's opinion was inconsistent with his treatment notes and again cited specific examples. As to Dr. Epstein, the ALJ noted that his opinion that Plaintiff was "totally and permanently disabled and unable to work" is not a medical opinion but rather a determination for the Commissioner. Plaintiff does not contest this conclusion but argues that the ALJ should not have rejected "the remainder of the opinion." However, nothing else in Dr. Epstein's letter constitutes an opinion. He merely listed Plaintiff's diagnoses, prior testing, and current medication, and invited the ALJ to contact him for to clarify the nature and extent of Plaintiff's work-related limitations. The first three items are merely factual assertions, not opinion. As to

12

the invitation to follow up, an ALJ "is required to contact a medical source only if the evidence submitted is insufficient to make a disability determination." *Laura M. v. Saul*, No. 18 C 6161, 2019 WL 3216027, *3 (N.D. Ill. July 17, 2019). Here, there was more than enough evidence for the ALJ to determine that Plaintiff is not disabled. Thus, the ALJ had no obligation to follow up with Dr. Epstein.

The ALJ's rejection of the statements of Plaintiff's family members was also supported by substantial evidence. He explained that the statements were inconsistent with the medical evidence. Therefore, the ALJ supported her rejection of the opinions of treating physicians and statements from third parties.

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 11] is denied, and the Commissioner's Motion for Summary Judgment [Doc. No. 14] is granted.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:**

**DATE:　February 28, 2025**

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**